Spear, J.
Séveral questions are presented by the record. 1. Was The Queen City Telephone Company so organized at the time it made application to the City, and later, as to give it a standing calling for action by the council and afterward by the probate court? 2. Even though the Company were legally organized, did the petition filed in the probate court itself state a case warranting affirmative action in favor of the Company by that court? 3. If the petition did state a case warranting such affirmative action, had that court power to grant a right to such company to place its wires and apparatus in conduits under ground?
1. It was the judgment of the circuit court that the Company- had not been so legally organized as *77 to give it a standing to maintain its action. In this conclusion we concur. As held in Zanesville v. Tel. Co., 64 Ohio St., 67, the proceeding is practically for an appropriation; that is, it partakes of the character of an exercise of the right of eminent domain. In Powers v. Ry. Co., 33 Ohio St., 429, it is held that it is essential to a judgment of condemnation in an appropriation proceeding that the company should prove its corporate existence, and among other things show that it has been fully organized by the election of directors. Proof of the existence of the corporation and of its right to make the appropriation is also now required by section 6420, Revised Statutes, and the determination by the court of those questions favorable to the company is made jurisdictional. Sections 3243, 3244, and 3245, Revised Statutes, taken together, require that an installment of ten per cent on each share of stock shall be payable at the time of making the subscription; that as soon as ten per cent of the capital stock is subscribed notice for the election of directors may be given; that no person shall vote for directors for any share on which any installment is due and unpaid, and the votes of a majority of the number of shares shall be necessary for a choice. Tested by these requirements the record shows that there had been no legal election of directors, and that the corporation had not been organized in such manner as to entitle it to a decree under section 3461. As a predicate to any action by the probate court it must have been made to appear that the plaintiff and the municipal authorities could not agree, and since the plaintiff could act only through its legally constituted officers, the absence of such officers was fatal to its claim of a failure to agree.
*78 It is urged that the pleadings do not raise the issue as to the organization of the corporation. We agree also with the conclusion of the circuit court that the issue is sufficiently made, the rule being that in such a case as this a general denial puts the burden on.the company to show that it has complied with the statute.
The foregoing disposes of the case, but inasmuch as the Telephone Company might, in a new uroceeding, correct this error, and especially as the other cases referred to in the statement are still pending in the probate court, we proceed to consider briefly other questions.
2. As to the petition. It was the judgment of the circuit court that the petition did not present to the probate court defined issues to invite judicial determination. In this conclusion we concur. There is no statutory warrant for the claim that the probate court is free to make any order or decree that may be demanded. The power of the probate court is judicial power, as held in the Zanesville case, and in order to invoke the exercise of that power defined issues must be presented, issues showing specific questions of difference between the parties, and in the absence of such showing it seems clear that the probate court has no power in the premises other than to dismiss the petition. The petition in this case does not show that any defined plan for occupancy of streets had been presented to council for its acceptance or refusal, nor that any such defined plan was even presented to the probate court. The defendant was entitled to have the issue made as to each street, and as to the question of incommoding the public by the proposed use, and if it appeared that for any cause the proposed use would incom *79 mode the public in the use of such street as a street then the demand should be refused on that ground. In such situation, also, it was manifestly the exercise of legislative, as contrasted with judicial power, for the court to go forward and make a general order giving the right to the use of the streets generally, and prescribing the mode of use not only for the present but directions for change of poles, wires, etc., as the future necessities of the streets and ways may require, and requiring the plaintiff before entering upon the construction of the work to file with the board of public service plans showing the location and character of the work, and authorizing the board to change the location, etc., thus delegating to an administrative body power to make necessary specifications as to mode of use, location, etc. To hold and direct a mode of use of a street at the present would be, upon issues joined, judicial; to direct its use under changed conditions in the future would be legislative. It was also error for the court to overrule the motion of defendant to make the petition more definite and certain.
3. In any event had the probate court power to grant a right to the Company to place its wires and apparatus in conduits under ground? It is believed that this point is satisfactorily answered by reference to the sections of the Revised Statutes relating to. the subject of the control of streets and the construction of conduits thereunder. Section 3454, enacted in 1852, is the foundation of the right of telephone companies to use the public roads of the state. This right is there given to telegraph companies, but by section 3471, this section, as also the entire chapter, is' made to apply to telephone companies also, but telephone companies are specifically *80 made subject to all the restrictions imposed by the chapter upon telegraph companies. Then by section 3461, enacted in 1865, the manner of acquiring the right to use streets of a municipality is provided for. Where the lands sought to be appropriated to the use of a company are subject to the easement of a street the mode of use shall be such as shall be agreed upon between the municipal authorities and the company, and if they cannot agree then the probate court shall direct in what mode the line shall be constructed along such street so as not to incommode the public in the use of the street. But this use, as authorized by section 3454, is simply “by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires. ’ ’ Applying the rule of expressio unius exclusio alterius, this language by inference excludes the idea of conduits in subways. Looking for a specific provision on the subject, we find that the first which in terms covers the subject of conduits is section 3471-1, enacted in 1891. The title of the act is “To authorize telephone companies to place and maintain their wires under ground, when consent is had of cities where the same are situated,” and the body of the act provides that any company owning and. operating a telephone' exchange in any city “may construct and maintain underground wires and pipes or conduits and other fixtures for containing, protecting and operating such wires in the streets and public ways of said city, when the consent of such city has been obtained therefor,” etc. By the following section this consent is to be given by the board of street commissioners, of public improvements, of public works, and administration, or by the council in cities where no such board exists, and these are *81 the only provisions of statute to which attention has been called which treat of the subject of conduits. They are special provisions enacted long after the general provisions of section 3461, and by the application of familiar rules of construction, must be regarded as exceptions to the general provisions of previous statutes. The consent of the city is thus made an essential condition.
It is of course conceded as now well settled that the general power to occupy the streets of a municipality by a'telephone company is derived from the state, as held in Zanesville v. Tel. Co., supra, and Farmer v. Tel. Co., 72 Ohio St., 526. (Referring to this last case, it may not be amiss here to remark that oh page 532 the types make the writer say that the probate court is a substitute in all respects for the municipal authorities. This was not intended. The words “as to rates,” which should precede the above statement have dropped out. Without them the statement is too broad.) But, taking the sections of the statute as a whole and considering the conditions imposed on the exercise of such right, it is not to be inferred that the municipal authorities are stripped of all power to finally determine any matter relating to the general subject. It will be remembered that by section 2640 those authorities are given the control of the streets and are required to keep them open, in repair, and free from nuisance. It is to be noted, also, that by no statute is power given any tribunal to authorize permanent structures upon or in, or the use of any street, which will incommode the public, the dominant purpose being to facilitate public travel and transportation. Railway Co. v. Tel. Assn., 48 Ohio St., 390; L. S. & M. S. Ry. Co. v. Elyria, 69 Ohio St., 414. It seems, there *82 fore, clear that there is no power in the prohate court to authorize or direct the construction of conduits in subways under the streets of a city in the absence of consent by the municipal authorities.
The subject is a broad one, but we are not inclined to add unduly to the already copious literature by extended discussion. The case will be found fully and ably reported by the common pleas, opinion by Littleford, J., 2 O. N. P. R., N. S., 349, and by the circuit court, opinion by Swing, J., 5 O. C. C. R., N. S., 411.
The judgments of the circuit and common pleas courts will be affirmed and the cause remanded to the probate court with direction to dismiss the petition and to carry into effect the judgment of this court as to costs.

Judgment affirmed.

Davis, C. J., Shauck, Price and Crew, JJ., concur.